IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEISEAN D. ELLIOTT, #668092, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:24-cv-00963 |
| ) | |
| WILLIAMSON COUNTY SHERIFF'S ) | JUDGE CAMPBELL |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

State inmate Keisean Elliott, while he was in pretrial detention in the Williamson County Jail, filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submissions that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. See 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Factual Allegations**

Plaintiff alleges that he was assigned a new cellmate in the Williamson County Jail on May 14, 2024, and his new cellmate, inmate Edmonds, behaved strangely enough (including by "sitting on [the] bed Indian style reading a Bible [and] rocking back and forth") to make Plaintiff uncomfortable and fearful that he might be attacked. (Doc. No. 1 at 12.) Edmonds eventually began chanting and walking back and forth in the cell, even while Plaintiff was attempting to sleep. On

May 18, Plaintiff was escorted from his cell to talk to Sgt. Martinez, who, upon hearing that Plaintiff was in fear for his life because of Edmonds' behavior, ordered Plaintiff to be placed in protective custody and moved to the Crow's Nest, a cell reserved for the worst inmates. (*Id.* at 13–14.) The Crow's Nest is filthy and windowless, and Plaintiff was left there for three days because his jailers claimed (falsely, according to Plaintiff) that there was no other cell available. (*Id.* at 14.) He was not let out for recreation or to bathe until he had spent 34 hours in the cell. (*Id.*) Because of his move to a different area of the jail serviced by a different kiosk, Plaintiff was unable to use the kiosk to order commissary items while in the Crow's Nest. (*Id.* at 15–16.) He was served "finger food" meal trays, rather than regular meal trays, during his three days in that cell, and was also deprived of toilet paper for those days. (*Id.* at 17.) On May 21, 2024, Plaintiff was removed from the Crow's Nest and returned to a normal cell. (*Id.*)

Plaintiff subsequently received a disciplinary write-up for having his uniform pants rolled into his socks and received three days in administrative segregation as a result. (*Id.* at 18.) He was ultimately re-housed in the same pod, but not the same cell, with inmate Edmonds, whose presence in the pod caused Plaintiff distress. (*Id.*)

Finally, Plaintiff alleges that he had a request for an extra mattress approved by a nurse due to pain in his back and hip from a 2018 injury and surgery; however, a guard took the extra mattress from him, either because the guard dislikes Plaintiff or because of a new jail rule "that inmates cannot have an extra mattress if they do not have hardware in the body and their surgery has [not] been within the last 6 months." (*Id.* at 20.)

Based on the facts recounted above, Plaintiff claims that he was subjected to discrimination and cruel and unusual punishment during his time in the Williamson County Jail, and that he endured pain and suffering as well as mental and emotional distress. He requests an award of

compensatory damages from Williamson County. (*Id.* at 5.)

**C. Analysis**

Because "pretrial detainees cannot be punished at all," the proper inquiry in evaluating detainees' claims of unconstitutional conditions of confinement is not whether those conditions are cruel and unusual, but "whether those conditions amount to punishment." *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 569 (6th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "The [Supreme] Court has instructed that '[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the challenged condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (alterations in original; internal quotation marks omitted) (quoting *Wolfish*, 441 U.S. at 538–39).

The alleged conditions of Plaintiff's confinement in the Williamson County Jail, while they were disturbing to him and clearly discomforting, do not amount to punishment or otherwise rise to the level of a constitutional violation. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (stating that the Constitution "does not mandate comfortable prisons") (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). While Plaintiff quarrels with the validity of the reasons his jailers gave for moving him to the Crow's Nest instead of a different cell in protective custody, and for taking his extra mattress from him, he does not claim that they expressed an intent to punish him by subjecting him to poor conditions. Instead, the Complaint makes clear that Plaintiff's move to protective custody was pursuant to his own request to be separated from inmate Edmonds and his statement that he feared for his life while celled with Edmonds. (*See* Doc. No. 1 at 13 ("I knew by stating that I feared for my life which I did that I would be housed on P.C. status something I didn't

want at first . . . [but] had to[] to make sure I would be safe and that I could rest comfortably.").) He alleges that the reason he was given for his three-day assignment to the Crow's Nest instead of another protective-custody cell was that there was a shortage of available cells at the time of his emergent need to be separated from Edmonds. He concedes that the confiscation of his extra mattress could well have been the result of a new jail policy that restricted such accommodations to inmates with surgically implanted hardware or who had more recently undergone surgery. Plaintiff clearly does not believe that his jailers had his best interests in mind or that they dealt with him truthfully. But he alleges that he knew or was informed of alternative, other-than-punitive purposes that are rationally connected to the actions he alleges to have caused him harm; accordingly, Defendants' punitive intent is not plausibly established by those allegations. *See Wolfish*, 441 U.S. at 538–39; *Griffith*, 975 F.3d at 569.

Especially in view of the short time Plaintiff spent in the Crow's Nest, the jail policy cited for removing his extra mattress, the fact that he was not re-housed in the same cell but only the same pod with inmate Edmonds, and the fact that no physical harm came to him while incarcerated in the jail,[2] the Court finds that his Complaint fails to state a plausible claim that his constitutional rights were violated there.

### III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

---

[2] The PLRA, 42 U.S.C. § 1997e(e), "provides that a prisoner may not bring a civil action for mental or emotional injury unless he has also suffered a physical injury." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). "[T]he predicate injury need not be significant, but must be more than *de minimis*." *Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002). While the Complaint asserts physical injuries of "Covid symptoms," "mild stroke," "spine and back pains," and "blood pressure problems" (Doc. No. 1 at 5), these conclusory assertions are not given further definition in the Complaint's remaining pages and so would not appear to suffice as non-*de minimis* injuries for Section 1997e(e) purposes.

In light of this outcome, Plaintiff's pending Motion for Appointment of Counsel (Doc. No. 5) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE